IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| PHYLLIS CLARK, | : | Case No. 1:12-cv-00408 |
| Plaintiff, | : | JUDGE BLACK |
| v. | : | |
| MAIN STREET ACQUISITION CORP., | : | |
| Defendant. | : | |

-----------------------------------------------------------------------------------------------------------------
**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**
-----------------------------------------------------------------------------------------------------------------

Now comes Defendant ("Main Street"), by counsel, and provides the following for its Reply in Support of its Motion for Summary Judgment. Plaintiff contests summary judgment on her claims under the federal Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. 1692 et seq., but it is apparent that there were no violations of the FDCPA in this case.

1. **The representations concerning the source and personal knowledge of business records in Mr. Harrison's affidavit did not violate the FDCPA.**

In her response to Main Street's Motion for Summary Judgment, Plaintiff argues that paragraphs 1 and 2 of the Harrison Affidavit violated 15 U.S.C. 1692e(10) because: (1) Mr. Harrison did not have personal knowledge of the records he relied upon in his affidavit, as he claimed, and (2) the records he relied upon were created by the original creditor, not Main Street, contrary to what was stated in the Affidavit. Plaintiff argues that these allegedly false statements were material because they would lead an unsophisticated consumer to believe that the debt buyer was able to authenticate the records in a collection action when, Plaintiff argues, it would not be able to do so. *See* Plaintiff's Memorandum in Opposition, p. 9.

1

These arguments are entirely void of support.  An affiant's assertion, by itself, that he has personal knowledge based on business records is not a violation of the FDCPA.  *Manlapaz v. Unifund*, No. 08 C 6524, 2009 WL 3015166, *5 (N.D. Ill. Sep. 15, 2009) ("the falsity of [the affiant's] statement that she had personal knowledge of facts that she gleaned from a review of business records is a technicality which would not mislead the unsophisticated consumer"); *Jenkins v. Centurion Capital Corp.*, No. 07cv3838, 2009 WL 3414248, *3 (N.D. Ill. Oct. 20, 2009) (affidavit based on records of debts was not false or misleading even though it included phrase "personal knowledge"; see affidavit filed at Case: 1:07-cv-03838 Document #: 77-3 Filed: 06/23/09, page 3 of 3); *Miller v. Javitch, Block & Rathbone*, 534 F. Supp. 2d 772 (S.D. Ohio 2008) (relying on business records affidavits in which the affiant states that she is "personally acquainted" with the facts in the affidavit; see Case: 1:06-cv-00828-MRB Doc #: 50-2 Filed: 09/21/07 Page: 1 of 64).

The cases upon which Plaintiff relies in support of the "personal knowledge" portion of this claim are inapposite.  In *Ison v. Javitch, Block & Rathbone*, and *Williams v. Javitch, Block & Rathbone*, this Court refused to dismiss (under Rule 12, not Rule 56) claims where the plaintiff alleged that the affiant falsely averred that he had personal knowledge.  *Ison*, No. 1:04cv846, 2007 WL 2769674, *6 (S.D. Ohio Sep. 18, 2007); *Williams*, 480 F.Supp.2d 1016, 1019 (S.D. Ohio 2007).  However, in those cases, the plaintiffs alleged that the affiants did not have access to the documents they would need to support a claim or check the truth or accuracy of their affidavits.  *Ison*, 2007 WL 2769674, at*1; *Williams*, 480 F.Supp.2d at 1019.  Consequently, *Ison* and *Williams* are easily distinguishable, as demonstrated in Main Street's Motion for Summary Judgment.

Plaintiff also relies on *Midland Funding, LLC v. Brent*, but that case is likewise distinguishable. In *Brent*, the affiant did not say his personal knowledge arose from business records, and he did not actually review records prior to signing the affidavit. 644 F.Supp.2d 961, 967 (N.D. Ohio 2009). In the present case, Mr. Harrison had access to, and did, review the business records on which he based his affidavit. *See* Harrison, Depo., p. 57, lines 20-23, p. 58, lines 14-16. Thus, Plaintiff's cases are inapplicable.

Plaintiff's claim here seems to hinge on the sentence in the Harrison Affidavit concerning the source of the records on which Mr. Harrison relied:

> These records are kept by Plaintiff in the regular course of business, and it was the regular course of business of Plaintiff for an employee or representative of Plaintiff, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time or reasonably soon thereafter.

Doc. # 24-3, Harrison Affid., ¶ 2. First, that sentence is not false. As Mr. Harrison explained in his deposition, what he intended by this sentence was that Main Street employees recorded or transmitted the information from the original creditor into Main Street's system. Harrison, Depo., p. 109, lines 3-8, 15-18, 20-25 (attached hereto); p. 110, lines 1-9. Thus, he relied on Main Street's records of the account at issue. *See, e.g., id.* at p. 110, lines 10-17; p. 111, lines 14-18.

Most importantly, even if the representation concerning the source of the records was not worded as Plaintiff would have preferred, it was not a material misrepresentation. Plaintiff relies on *Isham v. Gurstel, Staloch & Chargo* and *Wallace v. Washington Mutual Bank* in support of her argument that the source of the records was material. Plaintiff's Memorandum in Opposition, pp. 8-9 (*citing Wallace*, 683 F.3d 323 (6th Cir. 2012), *Isham*, 783 F.Supp.2d 986 (D. Ariz. 2010)). However, *Isham* and *Wallace* each involved the misidentification of a creditor. In

3

*Wallace*, the court explained that the misidentification of a creditor could be misleading because it could actually cause "confusion and delay in trying to contact the proper party concerning payment." 683 F.3d at 327. The alleged misrepresentation in this case simply would not mislead or confuse an unsophisticated consumer because it is of no consequence to the consumer whether Mr. Harrison's affidavit stated that he relied upon records made or transmitted by Main Street instead of the original creditor. Plaintiff argues that it was material because, had a consumer known "that the true source of business records is a third party, *and that the debt buyer suing her is not competent to authenticate those records*, then that consumer is in a better position to make an informed decision on how to respond to a collection complaint." Plaintiff's Memorandum in Opposition, p. 9 (emphasis added).

The problem with Plaintiff's argument, however, is that it is patently untrue. A debt buyer can authenticate a creditor's records in a collection action. Under the adoptive business records exception to the hearsay rule, Main Street would have been able to admit the records it relied upon without introducing testimony of the original creditor. *See, e.g., Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999) (stating that courts "have generally held that a document prepared by a third party is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it."); *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993); *United State v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992); *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984); *United States v. Sokolow*, 91 F.3d 396, 403 (3d Cir. 1996); *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992); *United States v. Ullrich*, 580 F.2d 765, 771-72 (5th Cir. 1978); *Ohio Receivables, L.L.C. v. Dallariva*, No. 11AP-951, 2012-Ohio-3165, 2012 WL 2859923 (Ohio Ct. App. 10th D. 2012); *Hickman v. Alpine Asset Mgmt. Gp.*, 2012 WL 4062694, *5 (W.D. Mo. Sep.

14, 2012) (finding, in a case under the FDCPA, that an affidavit signed by debt-collector defendant's representative which relied on original creditor's records was "more probative of [Plaintiff's] indebtedness than the minimal post hoc documents submitted by the debt collector in *Harvey* [*v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006)]."). The alleged inaccuracy in the affidavit was immaterial under Plaintiff's theory, because either way, the records were admissible.

The holding and discussion of the Sixth Circuit in *Miller v. Javitch, Block & Rathbone* is instructive on this matter:

> Regardless of how a credit card differs from a charge card, that difference would not mean so much to the least sophisticated consumer that he or she would be misled by the use of one term instead of the other. Granted, a lawyer closely parsing [the complaint] like a municipal bond offering may detect some ambiguity or confusion. But the least-sophisticated-consumer standard is not so exacting. It does not require reading the complaint with the astuteness of a Philadelphia lawyer. We read the complaint in its entirety and give it a common sense appraisal. Doing so, we conclude that the complaint would not mislead or deceive the least-sophisticated consumer.

561 F.3d 588, 595 (6th Cir. 2009) (quotations omitted). In finding another statement immaterial in *Miller*, the Sixth Circuit further reasoned:

> As for Miller's interpretation of the fourth potentially misleading statement- "Plaintiff acquired, for valuable consideration, all right, title and interest in and to the claim set forth below originally owed by Defendant(s) to ASTA II/Providian-03/NAT"-we again side with the district court. Miller contends that this statement violates § 1692(e)(12) by falsely or misleadingly implying that Providian assigned her debt to an innocent purchaser for value who enjoyed protection under the holder-in-due-course rule. She insists that this acquired-for-value statement would dupe the least-sophisticated consumer into thinking that Palisades enjoyed holder-in-due-course protection. We think not. The statement says nothing about holders in due course. And no reason exists to think that the least-sophisticated consumer gives any thought to holders in due course-by definition, the least-sophisticated consumer lacks any knowledge of the *concept*.

*Miller*, 561 F.3d at 595-96 (emphasis in original).

Such is the case here.  While there may be some technical difference between whether the records were made or transmitted by Main Street, rather than by HSBC, the affidavit should be read with common sense.  Mr. Harrison was essentially stating that he relied upon Main Street's records, and that much was true.  Harrison, Depo., p. 110, lines 10-17; p. 111, lines 14-18.  He did not claim that he was "authenticating" the records, and the least sophisticated consumer would lack any knowledge of that concept.  Indeed, even if the affidavit's language was read with "the astuteness of a Philadelphia lawyer," it would be clear that Main Street could authenticate the records without HSBC's testimony, pursuant to the adopted business records exception.  The fact that some of the records in Main Street's database may have originated with HSBC does not make Mr. Harrison's statement misleading or deceptive to the least sophisticated consumer.  Therefore, summary judgment should be granted in Defendant's favor on this claim.

**2. Use of the word "costs" in the affidavit did not violate the FDCPA.**

Plaintiff next argues that use of the word "costs" in paragraph 9 of the Harrison Affidavit violated the FDCPA.  Plaintiff contends that the word "costs" in that paragraph could only refer to "court costs," and that, because no court had yet awarded Main Street court costs, claiming them in the affidavit violated the FDCPA.  Plaintiff's Memorandum in Opposition, pp. 10-11.

First, the author of the affidavit, Jason Harrison, clearly testified that the word "costs" in the affidavit referred to collection costs.  Harrison, Depo., p. 79, lines 18-25 (attached hereto), p. 80, lines 1-25, p. 85, lines 15-20 (attached hereto). Even assuming that the word "costs" could be reasonably interpreted by an unsophisticated consumer to only mean "court costs," there is no violation of the FDCPA.

Plaintiff relies on *Shula v. Lawent,* 359 F.3d 489, 490 (7th Cir. 2004), to assert that reference to court costs prior to a judicial determination that costs are owed, violates the FDCPA.

6

However, *Shula* is easily distinguishable.  In *Shula*, the debt collector law firm sued the debtor in state court to recover a doctor's bill and court costs.  *Id*.  The debtor sent the doctor a check for the entire bill.  *Id*.  The debt collector defendants abandoned the state court case against the plaintiff.  *Id*.  Thereafter, they sent the plaintiff a demand for court costs from the abandoned proceeding.  *Id*.  Thus, the debt collector defendants in that case were seeking a sum not owed to them (*id*. at 492), which could not legally be obtained because the court case had been abandoned (*id*. at 491), and which the plaintiff had never made an agreement to pay (*id*. at 493).

This case is entirely different.  Here, Plaintiff has failed to present any evidence that she did not agree to pay collection or court costs (and Main Street submitted an exemplary[1] Cardmember Agreement which shows an agreement to such costs were standard); Main Street here, unlike the lawyer-defendants in *Shula*, would be the entity entitled to costs; and, court costs in this case were still at play (*see* Ky. R. Civ. P. 54.04; KRS 453.040(1)(a)).

Plaintiff's reliance on *Watkins v. Peterson Enterprises*, *Picht v. Hawks*, and *Goins v. JBC & Assocs.*, is equally misplaced.  *Watkins*, 57 F.Supp. 2d 1102 (E.D. Wash. 1999) (finding FDCPA violation where the costs that a debt collector attempted to collect were not permitted by law); *Picht*, 236 F.3d 446 (8th Cir. 2001) (finding FDCPA violation where defendant misrepresented the *amount* of a *penalty* it sought when the *amount* was subject to judicial determination); *Goins*, 352 F.Supp.2d 262, 269 (D. Conn. 2005) (finding FDCPA violation where amount in collection letter included maximum obtainable statutory damages that could be awarded in a civil action).

---

[1] It is not Main Street's burden here to prove that Plaintiff agreed to pay collection court and court costs.  It is Plaintiff's burden to show (with citation to evidence) (1) that she did not agree to pay court costs or collection costs, and (2) seeking court costs or collection costs was illegal.  Plaintiff has no evidence about the account or what she agreed to pay, because she has discarded all of her records.  See Plaintiff's Depo., p. 64, lines 7-9; p. 67, line 12; p. 90, lines 8-19.  Thus, Plaintiff cannot satisfy her burden.

The case of *Jenkins v. Centurion Capital* is far more on point.  In that case, the debt collector's affidavit stated that the debtor owed "$2,109.37 together with interest and other applicable costs."  No. 07 C 3838, 2009 WL 3414248 at *2 (N.D. Ill. Oct. 20, 2009).  In *Jenkins*, the plaintiff-debtor focused on the interest, rather than the costs at issue here.  Regardless, the analysis is almost identical.  Here, as in *Jenkins*, Plaintiff has "offered no evidence to show that the agreement did not govern Plaintiff's account or that [Defendant] was not entitled to interest," or in this case, costs.  *Id*. at *5.  Likewise, Plaintiff has "not sufficiently demonstrated how the unsophisticated consumer would be misled by the statement in the affidavit."  *Id*. at *4.  In many of the cases Plaintiff cites, the false statements at issue actually included unlawful or discretionary amounts within the *specific* amount allegedly owed.  *See, e.g., Goins*, 352 F.Supp.2d at 269 (including the maximum obtainable statutory damages in the more than $10,000.00 allegedly owed).  Improperly inflating an expressed amount owed would likely tend to mislead the least sophisticated consumer.

Conversely, in this case, like in *Jenkins*, the affidavit merely recites the actual principal amount due, plus the general terms of un-matured interest and costs.  The affidavit was plainly intended for litigation and was part of the state court complaint.  To argue that this was misleading because the court had not yet awarded "court costs" would be the same as arguing that the interest and principal amount due were misleading because the court had not yet entered judgment on those amounts.  Clearly, that cannot be the rule.  There was nothing misleading in stating that the principal amount was due, plus interest and costs.  Therefore, summary judgment should be granted in Main Street's favor on this claim.

### 3. The requests for admissions did not violate the FDCPA.

Plaintiff argues that Main Street violated the FDCPA as a result of requests for admissions submitted by an outside attorney. Plaintiff argues that Main Street's attorney (Slovin) knew the statements contained in the admissions were false and that Main Street is vicariously liable for the attorney's acts. Plaintiff's claim must fail because the request for admissions did not violate the FDCPA and, in any case, Main Street cannot be held vicariously liable for Slovin's conduct on this matter.

### A. The discovery requests did not violate the FDCPA.

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, the court held that false requests for admission violated the FDCPA as a result of three crucial facts: (1) the requests for admission "effectively requested that [the debtor] admit [the firm]'s entire case against him and concede all defenses", (2) the law firm "had information in its possession that demonstrated the untruthfulness of the requested admissions[]", and (3) "[t]he requests for admission did not include an explanation that . . . the requests would be deemed admitted if [the debtor] did not respond within thirty days." 637 F.3d 939, 952 (9th Cir. 2011).

In this case, request number 8 requests that Plaintiff admit the amount she owed in "any accounting statements attached to plaintiff's Complaint or other filing or submission." In the state court action, Plaintiff responded that she did not know if the request was true or false. *See* Exhibit J to Motion for Summary Judgment. Plaintiff argues this requested a false admission because the affidavit attached to the Complaint which contained the word "costs" was not true and Main Street knew it was not true. *See* Plaintiff's Memorandum in Opposition, p. 18. However, Plaintiff cites to no evidence in support of this contention. First, an affidavit is not an accounting statement. Second, even if the affidavit is an accounting statement, Plaintiff cannot

9

support the contention that "costs" could not potentially have been part of the amount owed. Third, Plaintiff points to no evidence that Main Street "had information in its possession that demonstrated the untruthfulness of the requested admission," as was necessary in *McCollough*. Indeed, to the contrary, Kentucky law allows costs "as of course." Ky. R. Civ. P. 54.04; KRS 453.040(1)(a).

Request for admission number 10 requested Plaintiff to admit that she never notified Main Street "of any reason why [she] was not obligated to pay [Main Street] the amount sued for." Again, in the state court action, Plaintiff responded that she did not know if the request was true or false. *See* Exhibit J to Motion for Summary Judgment. Nonetheless, Plaintiff argues that an April 22, 2011, letter she sent to Main Street's outside attorney (Slovin) did provide a reason she was not obligated to pay. Plaintiff's April 22, 2011 letter stated, in pertinent part:

> I am in receipt of your letter dated April 1, 2011, indicating that you are attempting to collect on a debt that I supposedly owe to Main Street Acquisition. I am not aware of entering into any contract or agreement with this company.

Plaintiff did not state that this is a reason she does not owe the debt to Main Street, and it most certainly *could not* be a reason why she is not obligated to pay the debt to Main Street. Debts are routinely sold to entities (commonly called "debt buyers") not a parties to the original contract, and such entities attempt to collect on such debts. To claim that this is a reason she did not owe the debt to Main Street is absurd.

**B.     There is no vicarious liability under these facts.**

Finally, regardless of the truth or falsity of the requests for admission, Plaintiff cannot show that Main Street is vicariously liable for its attorney's alleged violations of the FDCPA. To establish that Main Street is vicariously liable for the action of its attorney, Plaintiff must demonstrate that Main Street had some control over the alleged conduct. *Bodur v. Palisades*

10

*Collection, LLC*, 829 F.Supp.2d 246 (S.D.N.Y. 2011); *Cassady v. Union Adjustment Co.*, No. C 07-5405 SI, 2008 WL 4773976 at *6 (N.D. Cal. Oct. 27, 2008); *Clark v. Capital Credit & Collection Servcs., Inc.*, 460 F.3d 1162 (9th Cir. 2006).

Although the cases cited by Plaintiff hold that a debt collector *may* be vicariously liable for the actions of another under the FDCPA, these cases do not stand for the proposition that a debt collector is *always* liable for the actions of its attorney. The cases of *Fox v. Citicorp Credit Servs., Inc.* and *Wadlington v. Credit Acceptance Corp.*, each addressed the unique matter of vicarious liability for an attorney's acts when a violation of 15 U.S.C. § 1692i (venue requirements) is alleged. *Fox*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Wadlington*, 76 F.3d 103, 108 (6th Cir. 1996). As the court in *Fox* explained, and the court in *Wadlington* acknowledged: "*In order to give reasonable effect to section 1692i*, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken." *Fox*, 15 F.3d at 1516 (emphasis added); *Wadlington*, 76 F.3d at 108. Otherwise, "for the first nine years after the FDCPA became law" (i.e. before attorneys were covered by the act), liability never could have rested on a venue violation. *Fox*, 15 F.3d at 1516; *Wadlington*, 76 F.3d at 108; *see also Pollice v. National Tax Funding, LP*, 225 F.3d 379, 405-06 (3rd Cir. 2000) (reversing grant of summary judgment to defendant because defendant debt collector "may" be vicariously liable for acts of another debt collector whom it enlisted to collect on its behalf).

The fact that vicarious liability may attach under certain circumstances does not mean it attaches here. In *Bodur v. Palisades Collection, LLC*, the court acknowledged, analyzed, and applied each of the cases cited in Plaintiff's memorandum. 829 F.Supp.2d at 258-59. And, indeed, the court in *Bodur* held that the debt collector in that case "may be vicariously liable for [the attorney's] acts." *Id*. at 259. However, and importantly, the court then applied the test for

11

vicarious liability under the FDCPA: "the principal must exercise control over the conduct or activities of the agent." *Id.* at 259 (*quoting Clark*, 460 F.3d at 1173 (9th Cir. 2006) (quotations omitted)). Using that test, *Bodur* held that the debt collector was not liable for the attorney's acts, and granted summary judgment in the debt collector's favor, because the plaintiff "failed to provide any evidence, or even claim, that [the debt collector] exercised control over [the attorney] or was involved in any of [the attorney's] collection attempts." *Bodur*, 829 F.Supp.2d at 259; *see also Cassady,* No. C 07-5405 SI, 2008 WL 4773976 at *6 (no vicarious liability for attorney's acts where "plaintiff has offered no evidence upon which a reasonable trier of fact could conclude that [debt collector] exercised control over the [attorney]."). These are precisely the facts in this case. Plaintiff has failed to offer any evidence that Main Street exercised control over or even had knowledge of the request for admissions at issue. Therefore, summary judgment should be granted in Main Street's favor on this claim.

## CONCLUSION

Based on the foregoing and the original memorandum in support of Defendant Main Street's Motion for Summary Judgment, the Harrison Affidavit was true, the alleged misrepresentations were immaterial, and Slovin's requests for admissions cannot lead to liability. There is no genuine issue of material fact, and Defendant Main Street is entitled to summary judgment on all claims.

Respectfully submitted,

/s/Boyd W. Gentry
Boyd W. Gentry (0071057)
LAW OFFICE OF BOYD W. GENTRY, LLC
2661 Commons Blvd., Suite 100
Beavercreek, Ohio 45431
Tel. 937.839.2881

>Fax 800.839.5843
>bgentry@boydgentrylaw.com
>*Trial Attorney for Defendant Main Street Acquisition Corp.*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served to the following counsel on May 2, 2013, via the Clerk of Court's CM/ECF System: Gregory S. Reichenbach, P.O. Box 256, Bluffton, OH 45817, Email: Greg@ReichenbachLaw.com, Steven C. Shane, P.O. Box 73067, Bellevue, KY 41073, Email: shanelaw@fuse.net.

>/s/Boyd W. Gentry
>Boyd W. Gentry (0071057)