UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS CLARK, *on behalf of herself and all similarly situated persons*, | : | Case No. 1:12-cv-408 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MAIN STREET ACQUISITION CORP., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 24)**

This civil action is before the Court on Defendant Phyllis Clark's Motion for Summary Judgment (Doc. 24), and the parties' responsive memoranda (Docs. 25, 27).

## I. BACKGROUND FACTS

Plaintiff opened a credit card account with Household Bank ("Household"). (Doc. 23 at 21, 82). Plaintiff used the account, but, according to Defendant, defaulted on her credit obligations. (Doc. 23 at 22; Doc. 13 at ¶ 8). Eventually, Household sent Plaintiff a letter stating it was closing the account but the balance was still owed and then sold the account to Defendant Main Street Acquisition Corp as an assignee of Household. (Doc. 23 at 61; Doc. 24-3 at ¶¶ 3, 6-7).

Defendant hired a law firm, Slovin & Associates Co., L.P.A. ("Slovin"), to represent Defendant in the collection of the account. (Doc. 24-4). Slovin sent a letter to Plaintiff explaining its retention by Defendant, and Plaintiff responded that she did not recall the debt and asked for proof from Defendant. (Doc. 24-4; Doc. 24-5).

Plaintiff had discarded all records regarding the account. (Doc. 23 at 64, 67, 90). Slovin responded with a packet of documentation regarding the debt and the sale of the account to Defendant. (Doc. 24-6; Doc. 23 at 75). An offer and counteroffer were exchanged regarding settlement of the debt, but no settlement was reached. (Doc. 24-6; Doc. 24-8). Slovin then filed suit in Kentucky state court on behalf of Defendant against Plaintiff, attaching to the complaint the affidavit of Jason Harrison. (Doc. 24-9). During the pendency of this state court case, Slovin served requests for admissions on Plaintiff. (Doc. 24-10).

Plaintiff filed this case under the federal Fair Debt Collection Practice Act ("FDCPA"), codified at 15 U.S.C. 1692 *et seq*. Plaintiff asserts two alleged violations of the FDCPA: (1) "intentional filing of false affidavits for the purposes of obtaining judgments against debtors in collection law suits and coercing debtors into paying alleged debts" (Doc. 13 at 2), and (2) allowing Defendant's outside legal counsel to serve "unfair and deceptive" requests for admission in a Kentucky state court case. (*Id*.)

There is no dispute about the contents of the affidavit and the requests for admission. The parties have each taken depositions and conducted written discovery addressing the merits of this case.

2

## II.  UNDISPUTED FACTS[1]

1. Plaintiff opened a credit card account with Household.  (Doc. 23 at 21; 82).

2. Plaintiff used the account.  (Doc. 23 at 22; Doc. 13 at ¶ 8).

3. Plaintiff does not recall disputing any of the charges on the account.  (Doc. 23 at 75).

4. Eventually, Plaintiff received a letter from Household stating that it was closing the account, and Plaintiff still owed the outstanding balance.  (*Id.* at 61).

5. Defendant hired Slovin to represent it concerning collection of the account.  (*See* Doc. 24-4).

6. Slovin sent written correspondence to Plaintiff explaining that Slovin had been retained to represent Defendant on the account.  (*Id.*)  That letter identified the account as follows:

    > Creditor: MAIN STREET ACQUISITION CORP.
    > Original Creditor: HSBC BANK NEVADA NA
    > Balance Due: $1,439.26 as of today's date

    (*Id.*)

7. Upon review of that letter from Slovin, Plaintiff did not recognize the name "Main Street Acquisition Corp.," but she remembered that she had a Household account.  (Doc. 23 at 89).

8. Plaintiff did not recall if she owed $1,439.26 because she had already discarded all of her records concerning the account.  (*Id.* at 64, 67, 90).

9. She had discarded the letter from Household which said the account was closed.  (*Id.* at 61).

---

[1] *See* Doc. 24-2 and Doc. 25-1.

10. In response to Slovin's initial letter, Plaintiff wrote the following:

> April 22, 2011
>
> Mr. Slovin,
>
> I am in receipt of your letter dated April 1, 2011 indicating that you are attempting to collect on a debt that I supposedly owe to Main Street Acquisition. I am not aware of entering into any contract or agreement with this company. I am including a copy of your letter for your reference and I request proof of a contract signed by me or agreement of any sort with this company. Once proof of my owing this debt is offered to me, I will be happy to discuss this matter with you further. If proof cannot be provided, I would respectfully ask that you consider this matter closed.
>
> I will await contact from you indicating proof or notice of closing this matter.
>
> Thank you for your time and attention to this matter.
>
> Sincerely,
> Phyllis Werderman
> 6500 U S HWY 641
> Marion, KY 42064

(Doc. 24-5).

11. Slovin responded with a packet of documentation concerning the account and its alleged acquisition by Defendant. (Doc. 24-6).

12. Plaintiff described that packet as "a huge stack of papers." (Doc. 23 at 75).

13. Included in that packet was a copy of Plaintiff's signed "Acceptance Certificate" opening the account. (Doc. 24-6).

14. Also included were copies of monthly account statements and a Bill of Sale of accounts from HSBC to Defendant.[2] (*Id*.)

15. Plaintiff sent the following written settlement offer to Slovin:

   > To: Slovin & Associates
   > Attn: Ron
   > CC: Brad A. Council
   >
   > Message:
   > Ron,
   >
   > As per our conversation on September 28, 2011, I am faxing my offer in an attempt to settle this debt. After seeking advice on this matter and being informed that 50% of the debt in this economy is a fair amount, I am offering to settle this matter for that amount.
   >
   > I currently have $500 and on Monday October 3rd, I will [*sic*] the remainder available. Bringing the total to $742.00. If this is agreeable with your client, please fax me an agreement at 270-965-5518. If a counter offer is offered, please fax to the fax number listed. I look forward settling this matter to the satisfaction of both parties.
   >
   > Thank you for your time and prompt attention this matter.
   >
   > Phyllis Werderman

   (Doc. 24-7).

16. Slovin extended a written counteroffer, but Plaintiff rejected it. (Doc. 24-8).

17. Unable to reach a settlement, Slovin filed suit in Crittenden County, Kentucky on behalf of Defendant and against Plaintiff. Slovin attached the following documents to its complaint:

---

[2] Plaintiff notes that the statements have "Household Bank Platinum" at the top, and "HSBC Card Services" in the payment address. Plaintiff notes that the Bill of Sale does not list Plaintiff's account or name, and does not have any "Exhibit A" attached, contrary to the text of the Bill of Sale itself. Plaintiff alleges that as a matter of law, the Bill of Sale is not admissible and does not prove that any particular account was transferred.

5

   a. Five monthly credit card account statements showing that the account was in default;
   b. Plaintiff's signed application opening the Household account;
   c. The Bill of Sale reflecting the assignment of the account from Household/HSBC to Defendant; and
   d. The affidavit of Jason Harrison.

(Doc. 24-9).

18. The Harrison Affidavit expressly stated that "the facts recited herein are based upon the electronic business records of the account in question, which are part of Plaintiff's regular business records." (Doc. 24-3 at ¶ 2).

19. Defendant went to great lengths to ensure that Mr. Harrison completely understood (1) the chain of the business records, (2) the language of the affidavit, (3) the use of the affidavit in litigation, and (4) the importance of reviewing the business records before signing an affidavit.[3] (*Id.* at 30-31, 32, 34, 35, 110, and 115).

20. Mr. Harrison received intensive training concerning record keeping from Defendant, including how account documentation was acquired, how it was stored, and how it was safe-guarded.[4] (*Id.* at 33-36, 111-113, and 124-125).

21. During a "normal day" at the office, Mr. Harrison speculated that he would sign "ten to twenty" affidavits per day. (*Id.* at 46).

22. Before signing an affidavit, Mr. Harrison would compare the data in the affidavit to the data from Defendant's computerized records. (*Id*. at 57).

23. He also had a paper copy of the account data while reviewing an affidavit. (*Id*. at 58).

---

[3] Plaintiff denies that Mr. Harrison actually understood the source of the data or "the chain of business records."

[4] Plaintiff alleges that it is apparent from the record that Mr. Harrison did not have an understanding of "how account documentation was acquired." Plaintiff alleges that the deposition testimony cited by Defendant does not establish that, and that it is clear that Mr. Harrison was confused about the very source of the data. (Doc 24-3 at 63-64, 73-74). Plaintiff alleges that Harrison knew nothing about Defendant's computers that housed the data. (*Id*. at 73-74. Finally, Plaintiff notes that Mr. Harrison had no knowledge of the accuracy of the data other than his confidence. (*Id*. at 63-64).

24. To ensure that Mr. Harrison understood what he was signing, it was "very normal" for Mr. Harrison to review the affidavit and the business records with an attorney before signing.[5] (*Id*. at 32).

25. During the pendency of the Crittenden County case, Slovin served requests for admissions to Plaintiff. (Doc. 24-10).

26. When Plaintiff responded to those requests, she admitted that she did not have enough information to admit or deny the requests.[6] (Doc. 24-12).

27. Since Plaintiff discarded her copy of the credit card account agreement (Doc. 23 at 64, 67, 90, and 161), Defendant provided Plaintiff with an exemplary copy of a Cardmember Agreement and Disclosure Statement that applied to Ameritech Platinum MasterCard accounts that were issued during the time period that Plaintiff's account was open.[7] (Doc 24-11).

28. That Cardmember Agreement provided that the account user would pay "court costs . . . and other collection costs related to the default to the extent permitted by law. . . ."[8] (*Id.* at 9).

29. In training sessions, Mr. Harrison learned about the collection process and what those costs were.[9] (Doc. 24-13 at 82).

---

[5] Plaintiff notes that the data on which Mr. Harrison relied was not qualified as a "business record" of Defendant. (Doc. 24-3 at 63-64, 66, 73-74).

[6] Plaintiff admits that her response to the state-court requests for admissions is contained in Doc. 24-12. Plaintiff notes that some of her responses indicated a lack of information, and others did not.

[7] Plaintiff states that the testimony cited by Defendant does not reference a "credit card account agreement." Plaintiff admits only that if she received such a document, she "probably" would have thrown it away. (Doc. 23 at 72, 112). Plaintiff notes that she testified that she did not know whether she actually received a credit card account agreement. (*Id*). Plaintiff states that the "exemplary copy" of a cardmember agreement has not been authenticated by anyone, and neither party to this case apparently knows whether the cardmember agreement applied at any time to Plaintiff's account. Plaintiff states that this document is an exhibit to discovery responses provided by Defendant to Plaintiff in the state collection case. Plaintiff urges that the document is not properly before this Court as evidence in a summary judgment proceeding, because it has not been authenticated.

[8] Plaintiff again urges that this document has not been authenticated and cannot be considered.

[9] Plaintiff admits that Mr. Harrison received general training on what "costs" might be, but notes that Mr. Harrison testified that for this account, he did not recall what "costs" meant.

30. Plaintiff has no evidence to dispute the balance owed or the balance claimed in the state court complaint, because she has discarded all of her records.[10] (Doc. 23 at 64, 67, and 90).

31. The requests for admission included the warning that they would be deemed admitted if Plaintiff did not respond within 30 days. (Doc. 24-9 at 1).

32. Plaintiff has no evidence that Defendant exercised control over the discovery requests served by Slovin. (Doc. 23 at 168-69).

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

---

[10] For the purposes of this case only, Plaintiff admits that she does not know the balance, if any, on the account.

## IV.  ANALYSIS

### A.  Harrison Affidavit

Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices."  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citing 15 U.S.C. § 1692(a)).  Courts use the "least sophisticated consumer" standard in determining whether conduct violates the FDCPA, which is an objective test.  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).  "[A]lthough this standard protects naïve consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 439 (6th Cir. 2007).

#### 1.  "Personal Knowledge"

The Harrison Affidavit states that Mr. Harrison had "personal knowledge of the facts stated herein and they are true and correct."  (Doc. 24-3).  Plaintiff alleges that because Harrison's personal knowledge was based on business records kept by Defendant, and not on his own firsthand knowledge of the underlying facts, the affidavit therefore violates the FDCPA.  (Doc. 13 at ¶ 14).

An affiant's assertion, by itself, that he has personal knowledge based on business records is not a violation of the FDCPA.  *Manlapaz v. Unifund*, No. 08 C 6524, 2009 WL 3015166, *5 (N.D. Ill. Sep. 15, 2009) ("the falsity of [the affiant's] statement that she had personal knowledge of facts that she gleaned from a review of business records is a

9

technicality which would not mislead the unsophisticated consumer"); *Jenkins v. Centurion Capital Corp.*, No. 07cv3838, 2009 WL 3414248, *3 (N.D. Ill. Oct. 20, 2009) (affidavit based on records of debts was not false or misleading even though it included phrase "personal knowledge"; *see* affidavit filed at Case: 1:07-cv-03838 Document #: 77-3 Filed: 06/23/09, page 3 of 3); *Miller v. Javitch, Block & Rathbone*, 534 F. Supp. 2d 772 (S.D. Ohio 2008) (relying on business records affidavits in which the affiant states that she is "personally acquainted" with the facts in the affidavit; *see* Case: 1:06-cv-00828-MRB Doc #: 50-2 Filed: 09/21/07 Page: 1 of 64).

Mr. Harrison had access to and did review the business records on which he based his affidavit. (Doc. 24-13 at 10-11). Plaintiff's claim appears to hinge largely on the sentence in the affidavit concerning the source of the records on which Mr. Harrison relied:

> These records are kept by Plaintiff in the regular course of business, and it was the regular course of business of Plaintiff for an employee or representative of Plaintiff, with knowledge of the act or event recorded, to make the record or to transmit information thereof to be included in such record, and the record was made at or near the time or reasonably soon thereafter.

(Doc. 24-3 at ¶ 2). As a threshold matter, this sentence is not false. Mr. Harrison explained in his deposition that what he intended to communicate was that employees of Defendant recorded or transmitted the information from the original creditor into Defendant's system. (Doc. 27-1 at 4-5). Mr. Harrison thus appropriately relied on Defendant's records of the account at issue.

10

Most importantly, even if the representation concerning the source of the records was inappropriately worded, it was not a material misrepresentation. Plaintiff relies on *Isham v. Gurstel*, *Staloch & Chargo*, 783 F.Supp.2d 986 (D. Ariz. 2010),.and *Wallace v. Washington Mutual Bank*, 683 F.3d 323 (6th Cir. 2012), in support of her argument that the source of the records was material. (Doc. 25 at 8-9). However, these cases involve the misidentification of a creditor and the risk of "confusion and delay in trying to contact the proper party concerning payment." 683 F.3d at 327.

Here, the alleged misrepresentation in this case simply would not mislead or confuse an unsophisticated consumer because it is of no consequence to the consumer whether Mr. Harrison's affidavit stated that he relied upon records made or transmitted by Defendant instead of the original creditor. Plaintiff argues that it was material because, had a consumer known "that the true source of business records is a third party, *and that the debt buyer suing her is not competent to authenticate those records*, then that consumer is in a better position to make an informed decision on how to respond to a collection complaint." (Doc. 25 at 9) (emphasis added). However, this argument is unavailing as a debt buyer can authenticate a creditor's records in a collection action. Under the adoptive business records exception to the hearsay rule, Defendant would have been able to admit the records it relied upon without introducing testimony of the original creditor. *See, e.g., Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999) (stating that courts "have generally held that a document prepared by a third party

11

is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it.").[11]

Here, the alleged inaccuracy in the affidavit is immaterial because the records are admissible either way. While there is some technical difference between whether the records were made or transmitted by Defendant rather than by the original creditor, the affidavit is to be read with common sense. Mr. Harrison affirmed that he relied upon Defendant's records, which was true. (Doc. 24-13 at 16-17). He did not claim that he was "authenticating" the records, and the least sophisticated consumer would lack any knowledge of that concept. The fact that some of the records in Defendant's database originated with creditors from which Defendant purchased debts does not make Mr. Harrison's statement misleading nor deceptive to the least sophisticated consumer.

### 2. "Costs"

Next, Plaintiff alleges that the statement "[t]he balance due and owing to Plaintiff by Defendant on the Account is $1,429.23, plus interest at the legal rate per annum from June 30, 2010 and costs" violates the FDCPA because the use of the word "costs" -- at a time when Plaintiff did not owe court costs -- was misleading, deceptive, and unfair. (Doc. 13 at ¶ 27).

---

[11] *See also United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993); *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992); *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984); *United States v. Sokolow*, 91 F.3d 396, 403 (3d Cir. 1996); *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992); *United States v. Ullrich*, 580 F.2d 765, 771-72 (5th Cir. 1978); *Ohio Receivables, L.L.C. v. Dallariva*, No. 11AP-951, 2012-Ohio-3165, 2012 WL 2859923 (Ohio Ct. App. 10th D. 2012); *Hickman v. Alpine Asset Mgmt. Gp.*, 2012 WL 4062694, *5 (W.D. Mo. Sep. 14, 2012).

As a preliminary matter, Mr. Harrison clearly testified that the word "costs" in the affidavit referred to collection costs and provided multiple examples of such costs. (Doc. 27-1 at 1-3). Furthermore, even in the event that the word "costs" could be reasonably interpreted by an unsophisticated consumer to mean only court costs, Plaintiff has failed to present any evidence that she did not agree to pay such costs. The affidavit merely recites the actual principal amount due, plus the general terms of un-matured interest and costs. The affidavit was plainly intended for litigation, and to argue that it was misleading because the court had not yet awarded "court costs" is tantamount to arguing that the interest and principal amounts due were misleading because the court had not yet entered judgment on those amounts.

Furthermore, the inclusion of the word "costs" is also immaterial and cannot form the basis of a FDCPA claim. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Muha v. Encore Receivable Management, Inc.*, 558 F.3d at 628. The word "costs" "would not influence a consumer's decision." *Muha*, 558 F.3d at 628. It is reasonable for a consumer to assume that a case headed to court might involve "costs," whether in the form of collection or court costs.

As a result of the foregoing, summary judgment is appropriate with regard to Plaintiff's claim that the Harrison Affidavit violates the FDCPA.

### B. Requests for Admissions

False requests for admission violate the FDCPA when three factors are present: (1) the requests for admission "effectively requested that [the debtor] admit [the firm]'s

entire case against him and concede all defenses," (2) the law firm "had information in its possession that demonstrated the untruthfulness of the requested admissions[]", and (3) "[t]he requests for admission did not include an explanation that . . . the requests would be deemed admitted if [the debtor] did not respond within thirty days." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011).

In this case, request number 8 requests that Plaintiff admit the amount she owed in "any accounting statements attached to plaintiff's Complaint or other filing or submission." In the state court action, Plaintiff responded that she did not know if the request was true or false. (Doc. 24-12). Plaintiff argues this requested a false admission because the affidavit attached to the Complaint which contained the word "costs" was not true and Defendant knew it was not true. (Doc. 25 at 18). However, Plaintiff cites to no evidence in support of this contention. First, an affidavit is not an accounting statement. Second, as previously established, even if the affidavit is an accounting statement, Plaintiff cannot support the contention that "costs" could not potentially have been part of the amount owed. Finally, Plaintiff points to no evidence that Defendant "had information in its possession that demonstrated the untruthfulness of the requested admission." *McCollough*, 637 F.3d at 952.

Request for admission number 10 requested Plaintiff to admit that she never notified Defendant "of any reason why [she] was not obligated to pay [Defendant] the amount sued for." Again, in the state court action, Plaintiff responded that she did not know if the request was true or false. (Doc. 24-12). Nonetheless, Plaintiff argues that an

14

April 22, 2011 letter she sent to Slovin did provide a reason she was not obligated to pay. Plaintiff's letter stated:

> I am in receipt of your letter dated April 1, 2011, indicating that you are attempting to collect on a debt that I supposedly owe to Main Street Acquisition. I am not aware of entering into any contract or agreement with this company.

(Doc. 24-5). Plaintiff did not state that this is a reason she does not owe the debt to Defendant, and it most certainly could not be a reason why she is not obligated to pay the debt to Defendant. Debts are routinely sold to debt buyers not party to the original contract, and such entities attempt to collect on such debts.

Plaintiff also cannot show that Defendant is vicariously liable for its attorney's alleged violations of the FDCPA. To establish that Defendant is vicariously liable for the action of its attorney, Plaintiff must demonstrate that Defendant had some control over the alleged conduct. *Bodur v. Palisades Collection, LLC*, 829 F.Supp.2d 246 (S.D.N.Y. 2011); *Cassady v. Union Adjustment Co.*, No. C 07-5405 SI, 2008 WL 4773976 at *6 (N.D. Cal. Oct. 27, 2008); *Clark v. Capital Credit & Collection Servcs., Inc.*, 460 F.3d 1162 (9th Cir. 2006).

Plaintiff is correct that a debt collector may be vicariously liable for the actions of another under the FDCPA. *Fox v. Citicorp Credit Servs., Inc*. 15 F.3d 1507, 1516 (9th Cir. 1994); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996). However, a debt collector is not always liable for the actions of its attorney. In *Bodur*, the court acknowledged, analyzed, and applied each of the cases cited in Plaintiff's

15

memorandum. 829 F.Supp.2d at 258-59. Indeed, that court also held that the debt collector in that case "may be vicariously liable for [the attorney's] acts." *Id*. at 259. However, the court then applied the test for vicarious liability under the FDCPA: "the principal must exercise control over the conduct or activities of the agent." *Id*. at 259 (quoting *Clark*, 460 F.3d at 1173 (9th Cir. 2006) (quotations omitted)). Using this test, *Bodur* held that the debt collector was not liable for the attorney's acts, and granted summary judgment in the debt collector's favor, because the plaintiff "failed to provide any evidence, or even claim, that [the debt collector] exercised control over [the attorney] or was involved in any of [the attorney's] collection attempts." 829 F.Supp.2d at 259; *see also Cassady*, No. C 07-5405 SI, 2008 WL 4773976 at *6 (no vicarious liability for attorney's acts where "plaintiff has offered no evidence upon which a reasonable trier of fact could conclude that [debt collector] exercised control over the [attorney]."). These are precisely the facts in this case, and Plaintiff has failed to offer any evidence that Defendant exercised control over or even had knowledge of the requests for admissions at issue.

As a result of the foregoing, summary judgment is appropriate with regard to Plaintiff's claim that the requests for admissions in question violate the FDCPA.

16

## V.  CONCLUSION

Accordingly, for the foregoing reasons, there being no genuine dispute as to any material fact, and Defendant being entitled to entry of judgment as a matter of law, Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED.**  The Clerk shall enter judgment accordingly, and this case is **CLOSED**.

**IT IS SO ORDERED**.

Date:  5/24/13  *s/ Timothy S. Black*
Timothy S. Black
United States District Judge